Our first case for today is 2017-30950, United States v. Paul Joseph Viola. You may proceed. Good morning, Your Honors. My name is John McClendon. I represent Paul Viola. I have some comments, but of course I'll be happy to entertain any questions at any time. Of all the cases cited by both parties, the Bruscantini case I'd like to comment on first. In that case, Mr. Bruscantini had an underlying state conviction just like Mr. Viola did, and then he was prosecuted in federal court by the federal authorities. The similarities end there, though, because in Bruscantini we really – it's such a short decision. We have no evidence of what he claimed he relied on. If you recall in the opinion, he says that a state judge and a state prosecutor had told him, oh, don't worry, this is not a federal conviction. But we don't know what it is. Is it a letter? Is it a transcript from the hearing? Is it a certificate? It just doesn't tell us. My guess is – and I'm stealing a phrase from the Kelly case, which I'll talk about in a second – is that it was highly equivocal evidence. There's just – there's nothing there to tell us what it is. And more importantly, distinguishing Bruscantini from this case is he never went to a jury trial. His attorney filed a motion to dismiss, which was denied, and then he entered a conditional plea, a Rule 11 plea, pled guilty and took up the denial of the motion to dismiss. So, A, we don't know what his evidence was, and B, it never went to a jury. Now, the evidence that we were not allowed to present was not – it was unequivocal, let's put it that way. We have a letter from the Louisiana Department of Probation and Parole telling Mr. Viola exactly what to do. But isn't the problem that you don't have a letter from the attorney general of the United States or the FBI or someone of that nature? That's the problem? That is a problem. We don't have such a letter. No such letters are issued, to my knowledge, ever to anyone. So, I mean, the problem is under our precedent. Aren't you stuck if it's the state official and not a federal official? So that is the mistake of law problem. And I would look at Barker, which says there are exceptions to the mistake of law. But I understand where you're going, Judge, and that's what the cases say. But in this one, I mean when you look at everything about this case is some state court. It's a state conviction. He's under state probation. He gets a letter from a state official telling him to go to a local official. In fact, the problem was so bad that the department, Louisiana Department of Probation and Parole, they had to go in and change their policies and procedures. Testimony, again, that the jury did not get to hear. Right. But even if the jury had heard it, the problem is, as the law exists now, the jury couldn't have appropriately relied upon this as it's a mis- Because it's not a legitimate basis because it has to be about the ignorance of the law is no defense, basically. Your Honor, I think a jury would have given great weight to that evidence. Well, the jury probably would have nullified the verdict. I mean, let's be real here. Isn't that what you wanted? But unfortunately, the judge can't let that in if it's not appropriate evidence. I understand your client probably feels that he's been very mistreated and you feel that way on his behalf. And the jury may have nullified the verdict, but that's not a legitimate reason to let in evidence. I guess the question I have is what else could Mr. Viola have done? As his dad would proffer the testimony, you know, he's got an eighth-grade education. And you've got the governor's staff saying we're confused about this letter. They're telling Probation Pro, y'all need to issue a new letter because this is causing all kinds of problems. I'm just not sure what else Mr. Viola could have done. Well, I do have a question for you in that. Did you raise that this is not a predicate conviction because it's no longer a conviction and there was no express provision that you can't possess or carry as the 922 requires? Did you raise that this actually is not a valid predicate conviction? Yes. You did raise that with Judge Minaldi, but did you raise that at any point so that we could consider that issue? No, ma'am, because unfortunately that Caron case— Right, but that Caron case does not follow the plain text, does it, according to Justice Thomas' dissent in that case? Caron really bothers me, Judge, because what it says—well, what the language in 921 that defines prior convictions, it says unless it expressly—and it goes on. Well, I just don't understand, Caron, because the certificate does not expressly say it. But Caron somehow stretches that to say, well, if there's any other law that in any way prohibits, it's just an all-or-nothing thing that they talked about. So did you preserve that issue for us to be raised in the Supreme Court or not? I did not brief that issue, Your Honor. I did not brief that issue. I mean I just—Caron is Caron, and I'm just kind of stuck with it. You know, even Judge Hicks struggled with this. He said it doesn't sound like the right result to me, and right and wrong are indifferent. It's just so unfair. It's just so unfair to do this to this man. Do you have any legal basis whatsoever that we could take action because we have to go on the law? Right. So the—I don't, but I would say the government doesn't really have anything extraordinarily strong. One way in which this could have been mitigated would be in the sentencing, I suppose, but it didn't happen. Yeah, you're right. Well, I mean in a sense when the judge turned around and sentenced it, he was fully aware, he, she, whoever the judge was, they were fully aware of these circumstances and presumably, if I were the district judge, I would be okay that the reassurances did not come from a federal agency under the controlling law of the Fifth Circuit, whether it's right or wrong, that's the law. And so I can't—you're stuck with this part of the thing. However, in posing the sentence of this thing, I can, given your conduct or your effort to be sure that this was okay, and you took your dad down there trying to be sure, et cetera, et cetera, in just a sentence, but that didn't happen. Now, why is that? It's your question, why did he give him 41 months? That was your explanation? I mean, it doesn't— Well, I can't—he told me, Judge Hicks said, well, I'll give you the low end of the guideline range. Give you what? He said, I will give you the low end of the guidelines. We gave him 41 months, which was the low end of the guideline range. I mean, I pled for a variant sentence. I mean, I really—I honestly—actually, I asked— But he gave you that much anyway, the low end. Sir? He did give you that much, I guess. I was shocked. I did a sentencing memorandum, and I didn't appeal a sentence because it was a low end of the guideline range. But I really thought in light of all of this, because Judge Hicks was a very nice judge. I mean, he got it. A lot of off-the-record discussion, but he understood where I was coming from. And I can't tell you how shocked I was that we got 41 months on this. I really thought he was going to give him probation in light of all of these circumstances, one of which is— most convicted felon in possession of firearms, the person is out committing some other new crime. I mean, Paul was hunting. And I know that's not relevant to the issues before here, but, Judge Hickman, you're right. I was really caught off guard with that sentence. But being low end of the guideline range, I don't think I could make an argument that it was substantively unreasonable. It's just—I thought—I looked at the Barker factors, and again, Judge Elrod, you're right. It's—the problem is Mr. Viola did not know to go to some federal authorities. I suspect most people in this country wouldn't know that you're supposed to go to federal authorities. And it's—he was reasonable from an objective basis. He did exactly what he was told to do. And the last factor, in fact, in Barker says that you should look at the— if the statement is issued by an official charged with interpretation, administration, and or enforcement for responsibilities in the relevant legal field. Well, the relevant legal field was a state conviction. And the person who gave him the okay to do it was the person that the state of Louisiana said go talk to this person. Not only did Mr. Viola do it, his father went and talked to him and said, are you sure my son can hunt? And that's in the record. The chief said, yes, you're good to go. I just think it puts a whole lot on private citizens to say now go figure out that you've got to go talk to the case. In fact, Your Honors, the Supreme Court just granted written and heard oral arguments in the Gamble case, which is an attack on the dual sovereignty doctrine, which is not perfectly fit for this. But when somebody gets prosecuted in state court and then the federal court comes in and prosecutes them for the exact same thing, that's not double jeopardy. It might be now. We'll get a decision in a few months, but it's kind of the same thing. It's like most people wouldn't know that. If you're a convicted felon in possession of a firearm in state court, and I've had this happen before, and then the federal government comes in and says we're going to prosecute for the same thing. People just don't know that. And you're right. That's not such a simple issue, particularly in the civil rights field. A lot of civil rights federal prosecutions are prosecuted because the states do not do so. That's a far more complicated issue than here. But in order for you to win on your Barker argument, we're not the right panel for that either. You have to go en banc. I probably would, Your Honor. Because we can't ignore our—we have a rule of orderliness. We have to follow our precedent. Yes, ma'am. Look, I know it's a tough decision. I just—it's just—boy, if I could follow an exception, this just isn't fair. I would have followed that exception. And I tried and tried and tried, but it's hard to explain to the client, to the family, that your son did everything he was supposed to do, and he still is convicted and has to go to prison. Do you have anything else that you want to say? I think we understand your argument, counsel. I do. But if you have something else, you're free if you have time. I have time. No, I think I've got it covered. I just—I just—if we could go back to trial, if this panel had the authority to remand this for a new trial and I could call those witnesses, then the government could certainly cross-examine those witnesses. Let's say Officer Muglia, the chief of police. They could cross-examine him and say, well, why didn't you tell him to go talk to the feds? You're not a federal authority. You should know that. I mean—and then the jury could consider that. And then Ms. Toopes from the Department of Probation and Parole. They could cross-examine her. And then let's let the jury— The problem with difficulty is that it's a combination of things, but the other fist that gets you here is a general intent offense. I mean it's civic intent. It's not—he possessed the weapon. That's it. Provided you have a felony. You know, let's say Mr. Viola had just gotten his letter and done nothing. Then I think they have a whole lot better case. Let's say he just said, I went hunting. I got my letter. I'm going hunting. But that's not what happened. I mean he did everything he was told to do and then some. And it just—Barker uses the phrase peculiarly unjust, and this case falls right into that category. Thank you. Thank you, counsel. We have your argument. Thank you. Thank you. May it please the Court. Forrest Phillips for the United States. The district court did not abuse its discretion in refusing to admit the defendant's first offender pardon letters or the testimony from state and local officials— Let me ask you a question. What does the record show, what consideration the district court gave to the equitable circumstances, equitable in the general sense, of this defendant's efforts to abide the law? Does it show—is there anything in the record that shows that? Or one would think that that would appear in some fashion, but I just didn't know if it's there or not. Harford? Yes, Your Honor. I think as far as whether this evidence should be admitted or not, it was a pure question of law that the defendant's ignorance of the law— I think you've heard the drift of the question so far. I think the law is pretty clear. But what you have, though, is a felon who would have no particular reason to know this super narrow little problem here and goes in and goes to a lot of trouble to find out whether he can possess a weapon. And this is Louisiana Parish where, you know, a felon doesn't have a hunting gun, that kind of thing. Pretty serious. And he's reassured by law authority. And then he gets picked up on this. Okay. My question is, in the sentencing, that's an equitable consideration that a judge certainly can take into consideration itself. It's not an equitable, stoppable defense to initiate the conviction. But my question is, how does that sentence reflect the trial judge's consideration of that circumstance? Yes, Your Honor. Well, regardless— He suggested to us that he sentenced at the lower end of the range. Is there anything else? Your Honor, well, the sentencing transcript— Did the government oppose a variance? I'm sorry, Your Honor? Did the government oppose a variance in this case? No, Your Honor. Not to my knowledge. The government stood silent or agreed that a downward variance would be appropriate given the very unique and difficult circumstances of this case? Your Honor, I believe the government stood silent. Why did the United States bring this case? Why did the United States bring this case? Why did the United States bring this case? Well, Your Honor— I'm not asking—I understand the legal arguments. I get the legal arguments completely. You mentioned discretion with respect to the district judge. What about discretion of the prosecution? Yes, Your Honor. They don't have to bring this case. I can answer that. It would require stepping out of the record somewhat. I think the facts of this case—there are some mitigating factors, as Judge Higginbotham pointed out. There's also evidence suggesting that Mr. Viola was not a blameless actor here. Specifically, Your Honor, in the record in this case, you have that ammunition. The ammunition that was seized from the search, that's in possession after he's been informed by the game official. Wait a minute. You can't have firearms. And then in January of 2016, well over a month after he's been informed by state officials, well, actually, you can't have a firearm. He's found that they loaded a clip for a rifle. And this is what requires going outside the record, at least in this case. Only a few days after that search warrant on Mr. Viola's home, a second search warrant was executed at a camp trailer in the Middle District that Mr. Viola frequented where they found another cache of guns, five or six, I believe, including a machine gun with an obliterated serial number. And, Your Honor, the Middle District, I think, has indicted that case now. It's gone to grand jury, and they've found probable cause. And, of course, Mr. Viola has not been convicted of that offense yet, so that in no way is sort of settled yet. What was the ammunition? It's a factor that the— What was the ammunition? Your Honor, various ammunition for various weapons, over 13,000 rounds found in his home after he's been informed by the local game official when he was cited for the first firearm found in his possession. You can't have a gun. Okay. Did he tell him he couldn't have ammunition at that time? Well, no, Your Honor, but that sort of goes to the crux of this case, right, is this is a mistake of law. And, you know, I think federal law is clear that a defendant's misunderstanding about the significance of his previous conviction, that it makes him a prohibited person, or his misunderstanding that, you know, a felon in possession of a firearm statute extends to a felon in possession of ammunition for a firearm. That's a pure mistake of law, not a mistake of fact. And, Your Honors, I want to briefly talk about the defendant's argument that Barker or Kelly extends a sort of good faith reliance exception here. As this Court has noted and inspires this binding precedent that in order to advance— Let me go back to your earlier question about your suggestions about his possession of all these other things. In terms of a timeline, when you file these charges, has that information already been developed? Your Honor, when the— Or actually, that's the prosecution. You then developed a second case. Your Honor, the case in the Middle District, that search warrant was executed on December 7, 2015. So that's right when this case is—you know, the search warrant for Mr. Viola's home was executed on December 3. So that's very much in the crux of charging decisions here, yes. Now, as far as that case being worked up and developed, that took some time is my understanding. I'm not intimately familiar with the facts of the Middle District case. Basically, I just reviewed the— So they proceeded on the easy case? I'm sorry, Your Honor? So they proceeded on the easy case in the meantime? Well, Your Honor, I don't know how much communication there was between the Western District and the Middle District, to be honest. I just know that our office was aware of this second incident that was, you know, sort of outside our jurisdiction. If the state's not talking to the feds and the feds aren't talking to each district, who's on first? That is a good question, Your Honor. But I know that these were facts that were sort of, you know, taken into account with respect to prosecutorial discretion. And, you know, to answer your question, Judge Ho. Did Louisiana law expressly provide that petitioner may not possess firearms, as 18 U.S.C. 921a20 says? Yes, Your Honor, it did. How did it expressly provide? And I'm not saying that in the way that Karen says, well, we don't really care about that, we're going to have a broad prohibition, but in the textual sense. The Louisiana statutes expressly limit, expressly provide limitations on a convicted defendant's right to possess firearms in a couple ways. Where did he get notice of that? Just carrying a concealed weapon law. Just carrying a concealed weapon, but that's, he did not get an express notice of that as the statute requires, did he? Well, Your Honor, it's not just the concealed carry prohibition. There's a blanket prohibition under Louisiana state law against convicted defendants possessing any sort of firearm for a 10-year period after conclusion of their sentence. And that's on the face of the felon in possession statute, the state law felon in possession statute. And it's, you know, not disputed in this case that that 10-year prohibition applied to Mr. Viola as well. So Mr. Viola couldn't possess any gun. Why did it apply to him? What state law provision says that applies to someone in his situation? That's the state felon in possession statute, Your Honor. So that's chapter 14, section 95.1c. And if you look to the record in our penal law. I don't recall that in my memory, the Louisiana statute, what does it say? Your Honor, it essentially says it provides a 10-year cleansing period for defendants convicted under state law before they can possess a firearm. And that's a state law, not any sort of federal law. It's a blanket prohibition. Following pardon. Following pardon, that law in Louisiana applies?  If you look to a record on appeal, page 81 and page 158, that's not an issue. And I believe that was admitted to before the district court that that prohibition would apply to Mr. Viola. Why? On its face it wouldn't, would it? Yes, Your Honor. Tell me where it says that applies once you've been pardoned in Louisiana law. Your Honor, the— Let me add one thing to that question. It's a good question to add to the question. Does this mean that the state officials that he contacted misled him as to the state law as well? Well, it seems to be the case, Your Honor, yes. Well, that's a different breed of cat, isn't it? Your whole argument's been that under the law that a state official can give reassurances, but it's not coming from a federal source. Implicit in that is that if that advice had come from a federal source, then it would be okay. I mean, you'd set up some kind of a defense for it, an equitable, possible equitable defense. In other words, the same sovereign that's prosecuting is giving out misinformation as to that. And what you're saying to me is that the state statute here, as to the law, prohibited his possessing a weapon. And that he was told that it was permissible for him to put—a state official said it was permissible. I hope I'm making myself clear. Yes, Your Honor. And to answer that question sort of in two parts, I think Karen is clear that application of the 921A20 and less clause is a matter of federal law. So a state official's erroneous statement as to state law wouldn't affect whether his previous conviction still applies. And as far as in the equitable estoppel argument— Now, you were—I misunderstood you. I thought that you were saying that under—that it was a state law that prohibited his possession of firearms. Okay? Yes, Your Honor. And the state official, when asked about the defendant and his father, is it okay to possess guns, and he's reassured by the state official that it is okay. Is that just a misstatement of state law? Yes, Your Honor. It is a misstatement of state law, and that would—you know, that might provide some sort of avenue for a—trapment by estoppel with respect to a state prosecution. But it still doesn't affect the fundamental distinction. We—I still don't have the answer to my question of how you get there to tell us that that's a misstatement of state law. Can you please tell me what—walk me—can you walk us through the state law that you say that that makes—that it's still inappropriate for him to possess a firearm? Yes, Your Honor. Under state law. Yes, Your Honor. That state law is found in 14 colon 95.1 subsection C. That's the state felon in possession statute. It effectively states that an individual who has been convicted of a state offense, a state felony, is prohibited from possessing a firearm for a period of 10 years after conclusion of whatever sentence he or she receives. But that's different than being pardoned from the sentence. Yes, Your Honor, but— Restoration. Yes, Your Honor. Like the letter says. Yes, Your Honor. That 10-year prohibition is—in the district court, it was sort of, you know, not debated, but it very much applied to Mr. Viola as well. And that's, again, Record and Appeal 81 and 158. No, they did debate that they were allowed to possess firearms under Louisiana law. I'm sorry, Your Honor? They did debate that in the district court. Yes, Your Honor. In fact, they asked for jury instructions to that effect, basically. Go ahead. Yes, Your Honor. So tell me—you still haven't told me what rule or law you're getting that tells us that the 10-year prohibition still applies. Well, Your Honor, I want to point the court to—I believe it's this court's decision in United States v. Washington. And, Your Honor, I'm not sure whether that case was cited in the brief because this issue had sort of not bobbled up. You can send it in a 28-J, and you can have two days to respond with any case that you think is appropriate responsive to that. But—so do you have a Louisiana authority for that proposition? Yes, Your Honor. I believe in the United States v. Eberhardt, if you look at page—excuse me, footnote 14 of the appellee's brief, that case is cited, and the 10-year prohibition is referenced there as well. Referenced as applying to a pardoned individual that Louisiana says somewhere in its—either through its case law or through its statutes that the 10-year prohibition applies to people who have been fully restored of their rights. Where does it say that? In Eberhardt? Will I see that in the Eberhardt case? Your Honor, I believe it applies. But see, you didn't answer the question. You don't have any authority. You just believe that's the answer. Your Honor, it is settled that it applies, and in the 28-J letter, that authority will be provided. Now, whether it's—because this wasn't an issue that has received extensive briefing, it's not—unfortunately, I can't— You don't know today. Is that the answer? You don't know, but that's what you think the law is. That's what I believe it is, yes, Your Honor. Okay, thank you. Yes, Your Honor. Thank you. And regardless, the 10-year—excuse me, the concealed carry prohibition still very much applies to Mr. Viola. So his conviction is still qualifying for the purposes of the unless clause in 922g1. And where was he—so you say that he was expressly told— Yes, Your Honor. —by knowing the concealed carry. Yes, Your Honor. I think that the pardon here is coming from state law, not that certificate. And state law is explicit with the concealed carry provision that Mr. Viola still can't—still is limited in some respect to his firearms rights. Okay. Well, I didn't realize it was going to take us so much to get to the—actually have the question. And the question is if the world were as the dissent in the Caron case says rather than the majority opinion, would you still win? Well, Your Honor, still the fact that the source of the pardon here, state law, is explicit. But I do think it would be a tougher question because you would be sort of mirroring the state's rights with federal rights as far as what the scope of the prohibition is. So Mr. Viola's prosecution would be made more difficult because his state's rights are limited with respect to— So you don't know? —the concealed carry. No, Your Honor. So you don't know? No, Your Honor. I don't think we would win under the dissent. You don't—you would not? We would not. So if that were the rule of law—and Caron was decided before Heller, before all of these important cases reminded us of the scope of the Second Amendment. And so I'm just—but you—so you would lose if that—if the dissent in Caron were the law, which we all know it is not as we stand here—sit here and stand here today. Yes, Your Honor. Okay. Thank you. And, Your Honors, I do want to emphasize that as the defendant acknowledged in his sort of argument, well, Judge, if you allow me to offer this evidence and you can give a mistake of law instruction to remind the jury that a mistake of law is not a defense. Ignorance of the law is not a defense. That essentially—at that point, the only sort of thing the jury could do is choose to follow a path of jury notification, which is not a harm, a reversible harm. It's a power the jury has. It's not a right on which the defendant can base any claim of reversible harm. What you have is a misstatement of state law, and if there is an equitable and stable defense as to that, the immediate answer is, well, that has to do with the state law, not the federal law. But the principle in our prior decision has to do with the representation of state officials regarding federal law. But if a part of the state system, given that representation, that particular—the state is stopped to prosecute them. The state could not proceed against them. What does that do to the use of that as a predicate on the federal office? In other words, it's not quite the same as the local sheriff assured the defendant that the misstatement is the federal law. And he said what he said, but he's misleading us to the state law, the consequence of which is that federal law is obtained. In other words, the federal law applies, but—so it's a little different. You would say that it's all the same thing, no matter what. Your Honor, it— Say it another way. The federal prosecute is derivative of an underlying state phenomenon, which itself has been attacked—is being attacked as being the product of a misleading statement by the state official. So it's the state official—the consequence of the state official's representation is to hold the—to accept the assurance that was given to them. And if you accept that, then you—the source of the federal law is—but you're just saying that the federal law doesn't matter. Yes, Your Honor. And I think Karen is clear about this, that although states' rights may govern the restoration of other civil rights, the application of the unless clause in the analysis— Suppose the state of Louisiana had fully pardoned this particular offense, any offense under state law. Yes, Your Honor. If Mr. Viola had received a discretionary pardon from the governor and that pardon did not expressly limit— Well, the misrepresentation is effectively that he did so, that he did receive effective pardon, that that's why it's not—that's why you can—that's why, son, you can carry these guns or you can buy your own gun. Yes, Your Honor. And this goes back to Louisiana law and the fact that these passive automatic pardons still leave in place various prohibitions. They're not the same as a discretionary pardon from the governor. And they leave in place the concealed carry permit. State law has mentioned how these passive pardons still allow for it to be used in terms of habitual offender applications and state sentencing proceedings. It still limits running for office, those sorts of things. So it's not the same as a full-on discretionary pardon from the governor. I just think if you gave effect to the misrepresentations that are made under state law, there would be no prior conviction of consequence. But I understand the argument, but it's not quite the same, but I'm not sure it's the difference given the law. That's right. Thank you, Counsel. Thank you. Thank you. Going back to what we talked about on Karen, I'm reminded I actually asked for a jury instruction. I asked for 18 U.S.C. 921-820, the definition that has unless. But during the charge conference, which is on the record, and I have it in my brief, I told the judge, well, if you're not going to let the letters in, then I don't think you should give this jury charge. And so I actually, my quote is, with the understanding that had my numerous objections to not getting those letters in about the pardon, had those come in, I would have asked that the paragraph, that this paragraph come in. The judge said, you've preserved your objection. And I put, I was in a quandary. So if we give this instruction, but the jury doesn't get to see the letters, then the jury is going to say, okay. Counsel, if you give full effect to the pardon, you still would face a difficult problem, a second problem with regard to the fact that if the Louisiana law is itself, at the time of its offense, prohibited concealed weapon, carrying concealed weapons. And given the Supreme Court's decision, that would be, it would follow that the unlawful cause has its effect. Well, I want to say I hope that I've preserved this properly for appeal. I really wanted this. But if you're not going to let this in, then this would totally confuse the jury. Your Honor. You're saying you preserved this in the district court. Sir? I think what you're telling us is do you think you did preserve this in the district court? Well, and I. Preserved it in this court? I asked, it's my issue three. I appealed that he wouldn't give these jury instructions. Right. You have that as an issue that you think you should have had the jury instruction, and it's a statement of the law which you think did not, would cut in your client's favor. That you think would inure to your client's benefit because there is no express statement in this case. Correct. So whether that's enough to say you've raised it as a Karen issue is, we'll have to decide that. Your Honor, I didn't bring up the Middle District case, but my opponent did. Just quickly, the search. So there's a river that breaks the Western District from the Middle District, and they searched. They got a search warrant for the Western District, and they didn't find anything, and they had a hunch that the guns were at a hunting camp. Was that information available to the district judge, the probation officer? Absolutely. In fact, they commented on it in the precinct report. Well, that may explain the sentence. Well, so here's the interesting thing. The Middle District authorities were aware of that in December of 2015, and they indicted Mr. Viola in the Middle District after I filed my notice of appeal with this case. And for what it's worth, I've got a pending motion to dismiss for vindictive prosecution there. Just based on the timeline, they've been sitting – the Middle District has been sitting on this since 2015. We tried this case in Lafayette, Louisiana. We lost. We were sentenced. I filed my notice of appeal, and three weeks later they indicted him in the Middle District. Your Honors, I do think this case can be remanded under these circumstances. The judge should give the mistake of law instruction. I should be allowed to call my two witnesses and put on my evidence. Let the government cross-examine them as long as they want. Let the judge give his jury instruction and let the jury decide it. Thank you, counsel. Thank you. We have your argument. Thank you. This case is submitted.